UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ROSALIO ORTIZ,<br><br>Defendant. | Case No. 5:14-cr-00028-EJD<br><br>**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS**<br><br>Re: Dkt. No. 118 |

Defendant Rosalio Ortiz moved to suppress evidence obtained from a traffic stop on October 18, 2013. Dkt. No. 118. The court heard the motion on April 23, 2018, and denied it on the record.[1] Dkt. No. 129. This order formalizes that ruling.

## I. BACKGROUND

In an Indictment filed January 16, 2014, Defendant and four other individuals were charged with one count of conspiracy to distribute 500 grams or more of methamphetamine in violation of 21 U.S.C. §§ 846, 841(a) and 841(b)(1)(A)(viii). The Indictment arose from a law enforcement investigation of Mexican drug trafficking organizations allegedly operating in Texas

---

[1] Defendant requested an evidentiary hearing. The court declined that request because the papers do not "allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist." United States v. Howell, 231 F.3d 615, 620 (9th Cir. 2000). The recitation of facts from Defendant's declaration is consistent with the officer's version, and the one material difference does not justify an evidentiary hearing. Defendant's unadorned denial of driving in a manner that could be perceived as driving under the influence of alcohol or drugs is too conclusory to create the possibility of a truly contested issue of fact. See United States v. Walczak, 783 F.2d 852, 857 (9th Cir. 1986) ("An evidentiary hearing on a motion to suppress ordinarily is required if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in issue.").

Case No.: 5:14-cr-00028-EJD
ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS
1

and California, including within the San Jose area.

During the investigation, law enforcement monitored the activities of several individuals suspected of having contact with the Mexican organization. One of those individuals was suspected of drug sales activity following monitored phone calls. On October 18, 2013, law enforcement observed this same individual meet with Defendant in Southern California and deliver a large cardboard box, which the individual placed in the rear of Defendant's vehicle. Defendant and the other individual then left the location.

Defendant drove onto the 60 Freeway, and law enforcement contacted the Pomona Police Department to look out for Defendant's vehicle. Officers located the vehicle traveling eastbound in the number two lane of the 60 Freeway. Because the vehicle was "tailgating" and swerving from side to side in its lane of travel, the officers believed Defendant may be driving under the influence and initiated a traffic stop. Defendant disputes the officer's description of how he was driving.

Defendant stopped on the right shoulder of the freeway. An officer approached and saw the cardboard box in the rear of the vehicle. The officer also observed that Defendant was nervous, had difficulty providing his driver's license, and spoke with an accent. The officer questioned Defendant about his children, where he lived, and where he was going. He then asked Defendant to exit the vehicle and walk back to the police car, ostensibly to determine whether Defendant was under the influence of alcohol or drugs.

According to Defendant, the officer did not ask him whether he had been drinking or taking drugs, and did not administer a sobriety test. Instead, the officer asked Defendant for permission to search his vehicle. Defendant responded in the affirmative. During the search, the officer opened the box in the rear of the vehicle and discovered eight bags of a white crystalline substance that appeared to be methamphetamine.

Defendant was taken to the Pomona City Jail and advised of his Miranda rights. He told the officers the methamphetamine did not belong to him, and that he was merely driving the methamphetamine to another location for a fee.

Case No.: 5:14-cr-00028-EJD
ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS

2

1  Defendant represents he was released from jail on October 21, 2013, and not charged.

**II.  LEGAL STANDARD**

Motions to suppress evidence must be made prior to trial "if the basis for the motion is then reasonably available." Fed. R. Crim. P. 12(b)(3)(C).

Defendant's motion is based on the constitutional authority governing traffic stops. "A police-initiated traffic stop is reasonable under the Fourth Amendment if the police stop the vehicle because of a 'reasonable suspicion' that the vehicle's occupants have broken a law." United States v. Hartz, 458 F.3d 1011, 1017 (9th Cir. 2006); accord Whren v. United States, 517 U.S. 806, 810 (1996). Additionally, "[a] seizure for a traffic violation justifies a police investigation of that violation." Rodriguez v. United States, 135 S. Ct. 1609, 1614 (2015). Because addressing an infraction is the purpose of a traffic stop, "it may 'last no longer than is necessary to effectuate th[at] purpose.'" Id. (quoting United States v. Sharpe, 470 U.S. 675, 685 (1985)).

**III.  DISCUSSION**

Defendant argues that all evidence obtained from or as a result of the traffic stop, including evidence obtained from the consent search, should be suppressed because (1) the officer initiated the stop without reasonable suspicion; (2) the officer unlawfully prolonged the stop beyond the time necessary to determine the purported traffic violation; and (3) Defendant's consent to the officer's request to search the vehicle was not voluntary. None of these grounds are persuasive.

**A.  The Traffic Stop was Initiated With Reasonable Suspicion**

As to the first ground, the court recognizes that "[r]easonable suspicion exists if 'specific, articulable facts . . . together with objective and reasonable inferences' suggest that the persons detained by the police are engaged in criminal activity." Hartz, 458 F.3d at 1017. Here, the facts and reasonable inferences warranted the officer's reasonable suspicion that the occupant of the vehicle he observed on the 60 Freeway was driving while under the influence, an activity prohibited under California law. Cal. Veh. Code § 23152. The officer perceived that Defendant's vehicle was "tailgating" and swerving within the lane, suggesting to the officer that the driver may

Case No.: 5:14-cr-00028-EJD
ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS
3

be impaired. Defendant's attempt to parse these facts and question the officer's perception that Defendant was driving under the influence is ineffective. As noted, the standard for reasonable suspicion does not require an officer to *know* a crime has been committed; rather, it is enough that the facts and inferences *suggest* a possible crime. See Florida v. Royer, 460 U.S. 491, 498 (1983) (observing in the context of a Terry stop that "certain seizures are justifiable under the Fourth Amendment if there is articulable suspicion that a person has committed or is about to commit a crime.").

The court therefore finds the traffic stop was lawful under the circumstances, no matter the reason for the officer's interest in Defendant's vehicle or what other purpose the stop ultimately served. See United States v. Willis, 431 F.3d 709, 715 (9th Cir. 2005) (holding that "if the officers have probable cause to believe that a traffic violation occurred, the officers may conduct a traffic stop even if the stop serves some other purpose").

### B. The Officer Did Not Unlawfully Prolong the Stop

The motion's second ground fares no better. Even if a stop is lawfully initiated to further investigate a traffic violation, the police "may conduct certain unrelated checks" so long as they do not "do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual." Rodriguez, 135 S. Ct. at 1615. Applying that rule to this case, the officer did not prolong the stop by seeking consent to search Defendant's car because he did so while still involved with "tasks tied to the traffic infraction." Id. at 1614. Specifically, the officer's declaration establishes he asked Defendant to exit the vehicle and was in the process of determining whether or not Defendant was driving under the influence at the time he obtained consent to search.

On this record, it cannot be said that all tasks tied to the traffic infraction had or reasonably should have been completed before the officer obtained consent and searched Defendant's vehicle. Id. And in light of that determination, the consent and the evidence resulting from the search are not subject to exclusion under Wong Sun v. United States, 371 U.S. 471 (1963), as fruit of the poisonous tree.

Case No.: 5:14-cr-00028-EJD
ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS
4

## C. Defendant Voluntarily Consented to a Search of his Vehicle

Turning to the motion's third ground, the district court examines the totality of all the circumstances, including a defendant's ability to understand English, when discerning whether the Government has proven the voluntariness of consent to a warrantless search. United States v. Brown, 563 F.3d 410, 415 (9th Cir. 2009); United States v. Gutierrez-Mederos, 965 F.2d 800, 804 (9th Cir. 1992). It undertakes this inquiry knowing the "touchstone of the Fourth Amendment is reasonableness" which "is measured in objective terms . . . ." Ohio v. Robinette, 519 U.S. 33, 39 (1996).

Five factors serve as guideposts:

> (1) whether the [consenting individual] was in custody; (2) whether the arresting officers had their guns drawn; (3) whether Miranda warnings were given; (4) whether the [consenting individual] was notified that she had a right not to consent; and (5) whether the [consenting individual] had been told a search warrant could be obtained.

Id.

Though helpful, these five factors do not constitute a "mechanized formula" and no one factor is determinative. Id.

The totality of all the circumstances surrounding Defendant's interaction with the officer demonstrates he voluntarily consented to a search of his vehicle. Several facts support this conclusion, even though Defendant was not notified he could decline consent. First, Defendant was not in custody at the time he consented to the search; instead, the officer stopped Defendant in order to investigate a possible traffic violation. Routine traffic stops are inherently non-custodial. Berkemer v. McCarty, 468 U.S. 420, 438-39 (1984) (holding "the atmosphere surrounding an ordinary traffic stop is substantially less 'police dominated' than that surrounding" custodial interrogation, and is more akin to a Terry stop). Nothing suggests the stop of Defendant was anything other than an ordinary roadside investigation, and the officer told Defendant he was not in custody when he consented to the search.

Second, the officer's conduct was not coercive. Neither handcuffs nor guns were used or

Case No.: 5:14-cr-00028-EJD
ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS

5

drawn during the traffic stop, and the officer did not threaten to obtain a warrant if Defendant did not consent. And though two officers were on the scene, only one spoke with Defendant before he consented to the search.

Third, a pre-consent Miranda warning was unnecessary since Defendant was not in custody when the officer asked to search his vehicle.

Fourth, the evidence shows that Defendant had sufficient command of English to understand the officer's question concerning consent to search. At the beginning of their encounter, the officer asked Defendant about his family, his background, and his travel plans, all of which Defendant answered. Though the officer noticed Defendant spoke with an accent, he was satisfied by Defendant's responses that Defendant was able to sufficiently understand and converse in English.[2] Only after making that determination did the officer ask Defendant for consent to search. See United States v. Amano, 229 F.3d 801, 805 (9th Cir. 2000) (noting voluntariness of a waiver can be based on officers' testimony "that Defendant appeared to understand and converse comfortably in English").

In sum, the court finds that Defendant voluntarily consented to the search.[3]

### D. **United States v. Orozco Does Not Alter the Analysis**

Though not discussed in the papers, Defendant relies on United States v. Orozco, 858 F.3d 1204 (9th Cir. 2017), to argue against reasonable suspicion. Orozco is of little help, however, because it was decided on unique facts that do not resemble the ones presented by this case. Where not distinguishable, it actually supports the conclusion that the officer had reasonable

---

[2] Defendant admits as much in the declaration he submitted in support of his motion by stating he speaks and understands "quite a bit in English."

[3] Because the court finds the traffic stop was supported by reasonable suspicion and the search was conducted with voluntary consent, it need not address the collective knowledge doctrine or Defendant's argument based on United States v. Magallon-Lopez, 817 F.3d 671 (9th Cir. 2016). In any event, Magallon-Lopez is inapplicable. There, it was undisputed the officers did not observe a traffic violation before the traffic stop even though they told the defendant they did observe one. Such is not the case here. This is therefore not the occasion to consider whether or not there exists a "due process (not Fourth Amendment) based right to be informed of the true basis for a stop or arrest." Magallon-Lopez, 817 F.3d at 677 (Berzon, J., concurring).

Case No.: 5:14-cr-00028-EJD
ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS
6

suspicion to stop Defendant.

Orozco involved a stop initiated by Nevada Highway Patrol troopers, who are trained to conduct administrative safety inspections "but are also charged with enforcement of Nevada's criminal laws." 858 F.3d at 1207. Under Nevada law, troopers can stop a vehicle to conduct an administrative safety inspection without reasonable suspicion. Id. at 1206.

Troopers stopped Orozco after receiving a tip that his vehicle was possibly engaged in drug running. Id. at 1209. In fact, the troopers planned to stop the vehicle even before seeing it. Id. Once they did, they conducted an administrative safety inspection which ultimately revealed several violations. Id. Orozco was not issued a citation, but the troopers asked for and obtained consent to search Orozco's tractor-trailer. Id. The search yielded twenty-six pounds of methamphetamine and six pounds of heroin. Id.

During the subsequent prosecution, Orozco moved to suppress the drug evidence, arguing the administrative safety inspection that uncovered it was an impermissible pretext "motivated by a desire to search for evidence of drug trafficking, rather than to conduct a commercial vehicle inspection." Id. The district court denied the motion, reasoning that "an officer having dual motives does not make a warrantless search pretextual, so long as it is conducted pursuant to a lawful administrative scheme with a constitutionally permissible motivation." Id. at 1210. Orozco was then convicted on two counts of possession with intent to distribute a controlled substance. Id.

The Ninth Circuit reversed, holding that a suspicionless stop made for reasons apart from a programmatic purpose, such as to obtain evidence of criminal activity, is not rendered lawful simply because it is undertaken by those charged with enforcing an otherwise valid administrative scheme. Id. at 1212. Stated differently, the court held that an ostensibly legal reason for a stop cannot serve as a pretext for an impermissible reason, if the impermissible reason is the sole purpose of the stop. Id. at 1213. For the stop of Orozco, the record showed its only purpose was to investigate the criminal activity described in the tip received by the troopers. Id. The administrative safety inspection was therefore an impermissible pretext which required the district

Case No.: 5:14-cr-00028-EJD
ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS

7

court to suppress the drug evidence.

Orozco cannot be neatly applied here, since there is no indication Defendant was stopped pursuant to an administrative scheme. Nor does the evidence support the theory that the sole reason for the traffic stop was to obtain evidence of criminal activity unrelated to driving under the influence. If anything, the evidence may show the officer stopped Defendant with a dual purpose: to investigate both a traffic violation and illegal drug activity. But even if that is true, Orozco teaches that the presence of a dual motive - one valid and one impermissible - does not render a stop unlawfully pretextual. Id. at 1213.

Accordingly, the court's consideration of Orozco reinforces the conclusion reached above: that the officer lawfully stopped Defendant based on reasonable suspicion of a traffic violation.

## IV. ORDER

Based on the foregoing, Defendant's Motion to Suppress (Dkt. No. 118) is DENIED.

**IT IS SO ORDERED.**

Dated: June 29, 2018

EDWARD J. DAVILA
United States District Judge

Case No.: 5:14-cr-00028-EJD
ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS
8